Sonnenblick, Parker & Selvers, P.C.
4400 Route 9 South, Suite 3000
Freehold, New Jersey 07728
(732) 431-1234
Attorneys for Plaintiffs
Jerome M. Selvers, Esq. jselvers@spspc.com
Chad N. Cagan, Esq. ccagan@spspc.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK KOENEMUND and BARBARA KOENEMUND, | : |
| Plaintiffs, | : |
| vs. | : |
| SICA WEALTH MANAGEMENT LLC and JEFFREY SICA, | : **COMPLAINT AND** |
| Defendants. | : **JURY DEMAND** |

Plaintiffs Frank Koenemund ("Frank") and Barbara Koenemund ("Barbara"), with residences at 131 Ocean Grand Blvd., Unit 701, Jupiter, Florida 33477 and 16 Toledo Drive, Brick, New Jersey, by way of Complaint against Defendants Sica Wealth Management ("Sica Management") and Jeffrey Sica ("Sica"), with offices located at 67 East Park Place, Morristown, New Jersey 07962, allege as follows:

**NATURE OF ACTION**

In violation of their duties to Plaintiffs, Defendants, as investment advisers, misrepresented and omitted material facts to Plaintiffs, and purchased in Plaintiffs' brokerage accounts unsuitable securities and employed unsuitable investment strategies in contravention of Plaintiffs' investment objectives, risk tolerance, and directions, among other wrongful conduct.

1

As a result of Defendants' wrongful conduct, in a brief span of approximately fifteen months from April 2011 through July 2012, at a time when the market gained approximately 13%, Plaintiffs incurred extraordinary losses of approximately $1,000,000.00. At the same time that Plaintiffs suffered devastating losses, Defendants were enriched with approximately $175,000.00 in fees.

Plaintiffs herein allege claims against Defendants for a violation of the Investment Advisors Act of 1940, 15 U.S.C. §80b-6, breach of fiduciary duty, violation of the Securities and Exchange Act of 1934, and Rule 10-b(5) thereunder, 15 U.S.C. 78j(b), 17 C.F.R. §240.10b-5, control person liability, 15 U.S.C. §78t(a), violation of the New Jersey Uniform Securities Law, N.J.S.A. 49:3-71, fraud, negligent misrepresentation, negligence, respondeat superior and unjust enrichment. Plaintiffs seek rescission of the contract entered with Defendants, restitution of consideration paid to Defendants, damages of approximately $1,000,000.00, market adjusted damages, punitive damages, pre-award interest, attorney's fees and costs of these proceedings.

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, 15 U.S.C. §80b-14, 15 U.S.C. 78aa and supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

2. Venue is proper pursuant to 28 U.S.C. §1391 because Defendants are residents in this district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants are subject to this Court's personal jurisdiction.

## THE PARTIES

3. Plaintiffs Frank and Barbara, husband and wife, are individuals with residences at 131 Ocean Grand Blvd., Unit 701, Jupiter, Florida 33477 and 16 Toledo Drive, Brick, New Jersey.

4. Defendant Sica Management is an investment advisory firm registered with the

2

United States Securities and Exchange Commission ("SEC") with offices located at 67 East Park Place, Morristown, New Jersey 07962. As a registered investment adviser, Sica Management manages client investments by trading securities through accounts held at registered broker dealers.

5. Defendant Sica is an individual and resident of the State of New Jersey and President and managing member of the Defendant Sica Management. Defendant Sica is identified as a "control person" for Defendant Sica Management on Defendant Sica Management's Form ADV, the Uniform Application for Investment Adviser Registration with the SEC.

## FACTUAL BACKGROUND

6. Plaintiffs Frank and Barbara are approximately sixty-nine (69) years old and retired. Frank and Barbara have been married for approximately forty-eight (48) years.

7. Plaintiff Frank, also known as "Doc", is a high school graduate. He has no specialized education, knowledge, training or skill in financial investments. He is a veteran of the United States armed forces, having served in the United States Coast Guard from 1960 through 1964. After being honorably discharged from the U.S. Coast Guard, he worked on shipping docks, then for a trucking company, and thereafter in various food related businesses.

8. Plaintiff Barbara has a high school degree and an Associate's Degree from Brookdale Community College in English. She has no specialized education, knowledge, training or skill in financial investments.

9. Plaintiffs are unsophisticated in the securities industry in general, and investments in securities, in particular.

10. In the early 1990s Plaintiffs established a company known as Mr. Cookie Face located in Lakewood, New Jersey. Mr. Cookie Face was in the business of manufacturing and

3

selling diet ice cream. Plaintiffs created and manufactured the product known as the "Skinny Cow" ice cream sandwich.

11. In or about the late 2000's, Plaintiffs relied on the advice of the registered investment adviser Massey, Quick & Co. LLC ("Massey") who managed Plaintiffs' investments through accounts held at the broker dealer Charles Schwab & Co., Inc. ("Schwab").

12. Among other accounts, Massey managed Plaintiffs' joint Account No. 3156-1257.

13. While managed by Massey, on or about April 29, 2009, Plaintiffs deposited $493,900 into Account No. 3156-1257, which sum was conservatively invested in the Schwab U.S. Treasury Money Market Fund.

14. On or about June 28, 2010, Plaintiffs deposited into Account No. 3156-1257 an additional $55,060. This sum was likewise conservatively invested by Massey in the Schwab U.S. Treasury Money Market Fund. Thus, as of July 2010, Plaintiffs' Account No. 3156-1257 had a total value of $527,840.44 and 100% of its assets were invested conservatively in the Schwab U.S. Treasury Money Market Fund.

15. Defendant Sica, while employed at the broker dealer A.G. Edwards & Sons, Inc. in the early 2000's, maintained Plaintiffs' grandchildrens' 529 College Savings Accounts.

16. Beginning in or about May 2010, Sica established Sica Management and solicited Plaintiffs for additional business.

17. In or about late 2010, Plaintiffs and Defendants entered into an agreement in which Defendants were retained as Plaintiffs' investment advisers. Thereafter, the accounts that were maintained by Massey were transferred to Defendants' maintenance. Pursuant to their agreement, Defendants received an advisory fee based on the value of Plaintiffs' accounts; the greater the value of the account, the greater the fee to Defendants.

4

18.     Among other accounts, from late 2010 through approximately April 2012, Defendants opened and/or received from Massey the following accounts:

a)  Account No. 3156-1257 -- Frank Koenemund and Barbara Koenemund Ten/Com

b)  Account No. 4079-6003- Frank and Barbara Koenemund

c)  Account No. 5453-4365 – Frank Koenemund TTEE

d)  Account No. 8796-9061 – Barbara Koenemund TTEE

e)  Account No. 3168-8672 – Frank Koenemund IRA

f)  Account No. 3169-5671 – Barbara Koenemund IRA

19.     In 2011, Plaintiffs sold the business for approximately $10,500,000 (the "sale proceeds").

20.     Plaintiffs sought to conservatively invest the sale proceeds from this once in a lifetime sale and generate income from their investments to support their retirement.

21.     Plaintiffs advised Defendants that they were retiring and needed income of $40,000.00 per month from their investments to support their retirement.

22.     Defendant Sica assured Plaintiffs that "I can get you $40,000.00 per month and have money left over."

23.     In a meeting among Plaintiffs, Defendants and Plaintiffs' accountant, Bob Caruso, Plaintiff Frank specifically told Defendants "invest so I don't lose principal."

24.     Defendants represented to Plaintiffs that their assets would be invested to generate income without risk to principal as directed by Plaintiffs.

25.     Defendants knew that Plaintiffs were unsophisticated investors who completely relied on Defendants' advice.

26.     In accordance with Plaintiffs' instructions, and their conservative investment

objective, retirement, unemployment, low risk tolerance, lack of sophistication, age, and need for income, Plaintiffs required a conservative investment portfolio with low risk that generated income.

27.     Tragically, Defendants wrongfully induced Plaintiffs to allow them to control and manage Plaintiffs' assets, including the sale proceeds, by misrepresenting, and omitting, the character and risk associated with the investments purchased by the Defendants and the investment strategies employed by the Defendants.

28.     On or about April 15, 2011, Plaintiff's deposited sale proceeds of approximately $918,624.00 into Plaintiffs' account no. 3156-1257.

29.     Between approximately April 29, 2011 and May 2, 2011, Defendants purchased in Plaintiffs' Account No. 3156-1257 approximately $870,000.00 worth of mutual funds, individual stocks and exchange traded funds.

30.     On June 2, 2011, Plaintiffs deposited sale proceeds of $8,200,000.00 into Account No. 3156-1257.

31.     In or about June 2011, Defendants purchased in Plaintiffs' Account No. 3156-1257 approximately $600,000.00 in unsuitable short positions in Proshares, ie, symbols TBF, TBX and TBZ.

32.     Defendants unsuitably converted a portfolio that was conservatively invested into a speculative and high risk portfolio overweighted and imbalanced in equities and leveraged with margin debt. As of June 30, 2011, Account No. 3156-1257 had approximately $8,158,033 invested in the Schwab U.S. Treasury Money Market Fund. As of January 2012 Plaintiffs' Money Market Fund was reduced to merely $2,519,455 and investments in equities were increased to approximately $4,000,000.

6

33.    In addition, Defendants unsuitably made investments on margin wherein the brokerage firm would loan funds for investment to Plaintiffs for which Plaintiffs would pay the brokerage firm interest at a high interest rate. In December 2011, Defendants generated unconscionable margin debt of approximately $140,000.

34.    For approximately two (2) years, from April 2009 through April 2011, Plaintiffs' Account No. 3156-1257 was 100% conservatively invested in the money market fund. After Defendants obtained control of the account, Defendants unsuitably converted the portfolio into an unsuitable high risk portfolio overweighed in equities with risky exposure to margin debt, as shown below.

| STATEMENT DATE | MONEY MARKET FUND | MARGIN | EQUITIES | VALUE |
|---|---|---|---|---|
| April 30, 2011 | $1,420,647 | | | $1,420,647 |
| May 31, 2011 | $ 522,453 | | $872,224 | $1,394,677 |
| June 30, 2011 | $8,158,114 | | $1,430,009 | $9,588,123 |
| July 31, 2011 | $7,119,144 | | $2,346,072 | $9,465,217 |
| August 31, 2011 | $5,528,981 | | $2,883,955 | $8,373,232 |
| September 30, 2011 | $5,579,240 | ($39,967) | $2,611,475 | $8,150,748 |
| October 31, 2011 | $4,974,702 | ($40,000) | $2,419,941 | $7,354,644 |
| November 30, 2011 | $4,089,993 | ($39,551) | $2,000,949 | $6,051,392 |
| December 31, 2011 | $3,130,046 | ($139,966) | $2,931,987 | $5,922,061 |
| January 31, 2012 | $2,519,455 | ($39,818) | $3,990,489 | $6,470,126 |
| February 29, 2012 | $1,556,089 | ($40,000) | $4,867,980 | $6,384,070 |
| March 31, 2012 | $ 711,412 | ($39,796) | $5,087,720 | $5,759,336 |

35.     Defendants wrongfully engaged in excessive and extraordinary in-and-out day trading in Account No. 3156-1257, exposing Plaintiffs to substantial risk of losing principal. In-and-out trading is short term trading strategy where the same security is bought and sold within a short period of time such as a day, a week or a month. Instead of investing Plaintiffs' assets in a manner to generate income, Defendants, as in-and-out traders, sought to profit from day-to-day price fluctuations to increase the value of the account, and, in turn, increase their fee. Day trading is a speculative, high risk form of trading unsuitable for Plaintiffs' conservative investment objective and low risk tolerance.

36.     Defendants also unsuitably invested in inverse products which seek to deliver the opposite of the performance of the index or benchmark they track. Essentially, these complex and high risk investments bet against the market; if the value of the market goes up, the value of the inverse product goes down.

37.     In violation of Plaintiffs' instructions, and contrary to Defendants' representations and promises, Defendants failed to invest Plaintiffs' assets in suitable manner to generate $40,000.00 per month income. Rather, unbeknownst to Plaintiffs, Defendants withdrew funds from Plaintiffs' principal to pay Plaintiffs' $40,000.00 per month income.

38.     In furtherance of their scheme, Defendants transferred funds between Plaintiffs' accounts and continued the wrongful day trading activity.

39.     As of September 2011, the account value of Account No. 4079-6003 was $2,338. On or about October 12, 2011, Defendants transferred $200,000 from Account No. 3156-1257 to Account No. 4079-6003, and then proceeded to wrongfully engage in excessive and unsuitable day trading activity in Account No. 4079-6003, exposing Plaintiffs to substantial risk of losing principal.

8

40.     On or about November 11, 2011, Defendants transferred an additional $200,000 from Account No. 3156-1257 to Account No. 4079-6003, and continued the extraordinary, wrongful day trading activity in Account No. 4079-6003.

41.     On or about December 30, 2011, Defendants transferred an additional $100,000 from Account No. 3156-1257 to Account No. 4079-6003, and continued the excessive and unsuitable wrongful day trading activity in Account No. 4079-6003.

42.     In or about April 2012, Plaintiff Frank opened with Defendants Account No. 5453-4365 – Frank Koenemund TTEE.

43.     On or about April 9, 2012, Defendants transferred $113,543.43 from Account No. 4079-6003 to Account No. 5453-4365.

44.     Defendants continued the inappropriate day trading activity in Account No. 5453-4365 through approximately July 2012.

45.     In or about April 2012, Plaintiff Barbara opened with Defendants Account No. 8796-9061 – Barbara Koenemund TTEE.

46.     On or about April 9, 2012, Defendants transferred $649,169.27 from Account No. 3156-1257, and $300,744.09 from Account No. 4079-6003 to Account No. 8796-9061.

47.     On or about May 10, 2012, Defendants transferred $25,000 from Account No. 3156-1257 to Account No. 8796-9061.

48.     On or about May 14, 2012, Defendants transferred $112,394.64 from Account No. 4079-6003 to Account No. 8796-9061.

49.     Through approximately July 2012, Defendants excessively and unsuitably day traded in Account No. 8796-9061.

50.     In or about October 2010, Account No. 3168-8672, Frank Koenemund IRA, was

9

transferred to Defendants.

51.     Defendants unsuitably day traded securities in Account No. 3168-8672 through approximately July 2012.

52.     In or about October 2010, Account No. 3169-5671, Barbara Koenemund IRA, was transferred to Defendants.

53.     Defendants unsuitably executed trades in Account No. 3169-5671 through approximately June 2012.

54.     In 2011, Plaintiffs requested that Defendants sell securities with unrealized losses to offset taxes due on gains in the sale of Plaintiffs' ownership of Mr. Cookie Facc. Defendants failed to follow Plaintiffs' instructions and refused to sell securities. As a result, Plaintiffs were required to pay taxes that could have been, and should have been offset. Incredibly, the same positions that the Defendants refused to sell in 2011 were subsequently sold by the Defendants in 2012.

55.     As a result of Defendants' egregious, wrongful conduct and mismanagement, Plaintiffs lost approximately 15% of their portfolio. During the same period of time, the Standard & Poors Index gained approximately 13%.

56.     In or about July/August 2012, Plaintiffs terminated their relationship with Defendants and transferred their accounts to a different advisor.

57.     Catastrophically, Defendants unsuitable day trading strategy, and failure to invest Plaintiffs' assets suitably with an objective of income, and failure to follow instructions, proximately caused Plaintiffs to incur losses of approximately $1,000,000.00.

58.     At the same time Plaintiffs suffered devastating losses, Defendants were enriched with approximately $175,000 in fees.

10

## COUNT I

### VIOLATION OF INVESTMENT ADVISORS
### ACT OF 1940, 15 U.S.C. §80b-6

59.     Plaintiffs reallege and incorporate by reference the allegations contained in the foregoing paragraphs of the Complaint as if set forth at length herein.

60.     Sections 206(1) and 206(2) of the Investment Advisers Act of 1940, 15 U.S.C. §§80b-6(1),(2) prohibit fraudulent conduct by investment advisers and impose a fiduciary duty on investment advisers.

61.     Defendants, as investment advisers, had a duty to act in good faith, to disclose fully and fairly all material facts to Plaintiffs and to employ reasonable care to avoid misleading Plaintiffs.

62.     Defendants had a duty to act for the benefit of Plaintiffs and not use Plaintiffs' assets to benefit themselves.

63.     In violation of the Investment Advisers Act, Defendants breached their duty owed to Plaintiffs by, among other wrongful conduct, misrepresenting material facts, failing to fully and fairly disclose all material facts to Plaintiffs, including without limitation, the high risk of loss associated with Defendants' investments and strategies, failing to employ reasonable care to avoid misleading Plaintiffs, failing to act for the benefit of Plaintiffs and for using Plaintiffs' assets to benefit themselves.

64.     As a result of Defendants' wrongful conduct, Plaintiffs suffered damages and are entitled to relief offered under the Investment Advisers Act including rescission to void the contract entered with Defendants and restitution of consideration given under the contract.

11

## COUNT II

### BREACH OF FIDUCIARY DUTY

65.     Plaintiffs reallege and incorporate by reference the allegations contained in the foregoing paragraphs of the Complaint as if set forth at length herein.

66.     Defendants knew that Plaintiffs were unsophisticated in securities investments and that Plaintiffs followed their advice.

67.     Plaintiffs reposed a special confidence in Defendants who were Plaintiffs' advisers and reasonably inspired confidence that they will act in good faith for Plaintiffs' interests.

68.     Defendants, as investment advisers, are fiduciaries under the Investment Advisers Act, with a duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to avoid misleading clients.

69.     Defendants had a fiduciary duty to exercise the utmost good faith in dealing with Plaintiffs, including but not limited to the following:

(a)     To manage Plaintiffs' assets as dictated by Plaintiffs' needs, objectives and instructions;

(b)     The duty to inform the customer of the risks involved in purchasing or selling a particular security;

(c)     The duty to diversify the customer's assets and avoid over-concentration in a limited number of stocks or asset classes.

(d)     The duty to ensure the customer understood the risks of investing in risky securities and strategies and was willing to take the risks.

(e)     The duty to act in the best interests of Plaintiffs.

12

67.     In breach of their fiduciary duty, among other wrongful conduct, Defendants purchased in Plaintiffs' account unsuitable securities and employed unsuitable strategies in contravention of Plaintiffs' needs and objectives, and failed to follow Plaintiffs' instructions and directions.

69.     As an investment adviser, Sica Management had a duty by the Investment Advisers Act of 1940, and by rules promulgated under the Investment Advisers Act, to supervise its personnel so as to prevent violations of the Investment Advisers Act.

70.     Defendant Sica Management failed to establish appropriate compliance codes, policies or procedures to ensure compliance with the securities laws, or if such codes did, in fact, exist, Defendants failed to supervise to ensure enforcement of such compliance code, policies or procedures.

68.     As a result of Defendants' wrongful conduct, Plaintiffs suffered damages.

## COUNT III

## VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10(b)-5 THEREUNDER

69.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint as set forth at length herein.

70.     Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), makes it unlawful to "use or employ, in connection with the purchase or sale of any security. . . any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the [SEC] may prescribe . . ."

71.     Rule 10b-5, 17 C.F.R. §240.10b-5, makes it "unlawful . . . (a) to employ any device, scheme or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the

13

circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the sale of any security."

72.     Defendants made materially false or misleading statements or omitted to state a material fact necessary to make statements not misleading, including, without limitation, the assurance that "I can get you $40,000.00 per month and have money left over" and Defendants would invest Plaintiffs' assets commensurate with their conservative investment objective and "invest so [Plaintiffs] don't lose principal."

73.     Defendants acted with an intent to deceive, manipulate or defraud Plaintiffs. At the time Plaintiffs contracted with Defendants, Defendants knew they were not going to invest Plaintiffs' assets in a manner to generate income as directed but rather engage in speculative day trading and withdraw monies from Plaintiffs' principal to pay Plaintiffs their monthly income.

74.     Defendants' statements and omissions were reckless and an extreme departure from the standard of ordinary care, which presented a danger of misleading Plaintiffs that was either known to Defendants or so obvious that Defendants must have been aware of it.

75.     Plaintiffs justifiably relied on Defendants' misstatements and omissions causing them injury.

76.     As a direct and proximate result of Defendants' actions, Plaintiffs have incurred substantial damages.

## COUNT IV

### CONTROL PERSON LIABILITY, 15 U.S.C. §78t(a)

77.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint as set forth at length herein.

14

78.     The Securities Exchange Act of 1934 provides that a person may be jointly and severally liable along with the primary violator provided that the person controls the primary violator.

79.     Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78t(a), provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

80.     Defendants were control persons of employees and agents of Defendant Sica Management who committed the wrongdoing herein and are liable, jointly and severally, to Plaintiffs for damages.

81.     Defendants culpably participated in the wrongful acts described herein by executing the fraudulent wrongful transactions and/or through inactions as Defendants knew of the fraudulent acts and did nothing, to prevent its discovery.

82.     As a result of Defendants' wrongful conduct, Plaintiffs suffered damages.

### COUNT V

### VIOLATION OF THE NEW JERSEY
### UNIFORM SECURITIES LAW, N.J.S.A. 49:3-71

83.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint as set forth at length herein.

84.     By virtue of their wrongful acts and omissions set forth above, Defendants have violated and breached their duties under the New Jersey Uniform Securities Law, N.J.S.A. 49:3-

47, et. seq. Specifically, Defendants violated and breached their duties under the New Jersey Uniform Securities Law, N.J.S.A. 49:3-52 and 49:3-53, by among other wrongful conduct, (i) defrauding Plaintiffs, (ii) making untrue statements of material fact, and (iii) omitting statement of material facts necessary to make statements not misleading.

85.     Section 71 of the New Jersey Uniform Securities Law, N.J.S.A. 49:3-71, grants a private right of action for Defendants' wrongful activities and entitles Plaintiffs to recover the consideration paid for the security or the investment advice and any loss due to the advice, together with interest.

86.     As a direct and proximate result of Defendants' actions, Plaintiffs have incurred substantial damages.

## COUNT VI

## CONTROL PERSON LIABILITY, N.J.S.A. 49:3-71

87.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint as set forth at length herein.

88.     The New Jersey Uniform Securities Law provides that a person may be jointly and severally liable along with the primary violator provided the person directly or indirectly controls the primary violator.

89.     N.J.S.A. 49:3-71(b) provides:

> (d) Every person who directly or indirectly controls a seller liable under subsection (a) of this section, every partner, officer, or director of such a seller, or investment adviser, every person occupying a similar status or performing similar functions, every employee of such a seller or investment adviser who materially aids in the sale or in the conduct giving rise to the liability, and every broker-dealer, investment adviser, investment adviser representative or agent who materially aids in the sale or conduct are also liable jointly and severally with and to the same extent as

16

the seller or investment adviser, unless the nonseller who is
so liable sustains the burden of proof that he did not know,
and in the exercise of reasonable care could not have
known, of the existence of the facts under paragraphs (1)
through (5) of subsection (a) of this section which give rise
to liability. There is contribution as in cases of contract
among the several persons so liable;

90.     Defendants were control persons of employees and agents of Defendant Sica

Management who committed the wrongdoing and are liable, jointly and severally, to Plaintiffs

for damages.

91.     Defendants culpably participated in the wrongful acts described herein by

executing the fraudulent wrongful transactions and/or through inactions as Defendants knew of

the fraudulent acts and did nothing, to prevent its discovery.

92.     As a direct and proximate result of defendants' wrongful conduct Plaintiffs

suffered damages.

## COUNT VII

## FRAUD

93.     Plaintiffs reallege and incorporate by reference the allegations contained in the

preceding paragraphs of the Complaint as set forth at length herein.

94.     Defendants made material misrepresentations and/or omissions of past or

presently existing fact with knowledge of its falsity and the intent that Plaintiffs rely on such

misrepresentations and omissions.  Among other misrepresentations and omissions, Defendants

fraudulently represented that they would generate $40,000 per month in income from Plaintiffs'

investments and that they would invest Plaintiffs' assets commensurate with their conservative

investment objective and "invest so [Plaintiffs] don't lose principal."

95.     Plaintiffs justifiably relied on Defendants' fraudulent misrepresentations and

17

omissions to their detriment.

96.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages.

## COUNT VIII

### NEGLIGENT MISREPRESENTATION

97.     Plaintiffs repeat the allegations contained in the foregoing paragraphs of the Complaint as if set forth herein at length.

98.     Defendants negligently provided incorrect statements to Plaintiffs.

99.     Plaintiffs justifiably relied on Defendants negligent statements.

100.    As a direct and proximate result of Defendants' negligent misrepresentations and omissions, Plaintiffs suffered damages.

## COUNT IX

### NEGLIGENCE

101.    Plaintiffs reallege and incorporate by reference the allegations contained in the foregoing paragraphs of the Complaint as if set forth at length herein.

102.    Defendants owed a duty of reasonable care in the performance of their obligations to Plaintiffs.

103.    Defendants' failure to invest Plaintiffs' assets commensurate with Plaintiffs' investment objectives, needs and instructions, and Defendants' failure to adhere to industry norms and practices relating to suitability and risk disclosure constitutes a breach of due care owed to Plaintiffs.

104.    As a result of Defendants negligent conduct, Plaintiffs suffered damages.

18

## COUNT X

### RESPONDEAT SUPERIOR

105.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth at length herein.

106.    At all times, Defendant Sica was an employee of Defendant Sica Management and the tortious acts by Defendant Sica occurred within the scope of his employment.

107.    Defendant Sica Management, as employer, is liable for the wrongful acts of Defendant Sica causing injury to Plaintiffs under the principles of respondeat superior.

### COUNT XI

### UNJUST ENRICHMENT

108.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth at length herein.

109.    Defendants have been unjustly enriched and benefitted at Plaintiffs' expense.

110.    It is against equity and good conscience to permit Defendants to retain the benefits generated by their wrongdoing.

111.    As a direct and proximate result of Defendants' actions, Plaintiffs have incurred substantial damages.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

(a) Rescission of the contract entered with Defendants

(b) Restitution of consideration paid to Defendants

(c) Compensatory damages

(d) Punitive damages

(e) Market Adjusted Damages

19

(f) An accounting of Plaintiffs' losses and all consideration paid to Defendants

(g) Pre-judgment and post-judgment interest at the maximum rate allowed by law

(h) Attorneys' fees and costs associated with this proceeding, and

(i) Such other relief as the Court may deem equitable, just and necessary.

**SONNENBLICK PARKER & SELVERS, P.C.**
Attorneys for Plaintiffs

Dated: June 4, 2013

By: _____ **S/JEROME M. SELVERS**
     **JEROME M. SELVERS**

By: _____ **S/CHAD N. CAGAN**
     **CHAD N. CAGAN**

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by a jury as to all issues pursuant to FRCP 38(b).

**SONNENBLICK PARKER & SELVERS, P.C.**
Attorneys for Plaintiffs

Dated: June 4, 2013

By: _____ **S/JEROME M. SELVERS**
     **JEROME M. SELVERS**

By: _____ **S/CHAD N. CAGAN**
     **CHAD N. CAGAN**

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civil Rule 11.2, I hereby certify that to the best of my knowledge and belief, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

SONNENBLICK PARKER & SELVERS, P.C.
Attorneys for Plaintiffs

Dated: June 4, 2013

By: _____ **S/JEROME M. SELVERS**
              **JEROME M. SELVERS**

By: _____ **S/CHAD N. CAGAN**
              **CHAD N. CAGAN**